UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN RE GRAND JURY SUBPOENAS | Misc. No. 24-mc-159 (JEB) |
|---|---|

**OPPOSITION OF THE UNITED STATES TO MOTION TO UNSEAL SUBPOENAS**

The United States opposes the Motion to Unseal Subpoenas ("Motion") and the Supplement to Motion to Unseal Subpoenas and Request for Order to Show Cause and Request for Emergency Hearing ("Supplemental Motion") filed by Kelsie Kimberlin.[1] Ms. Kimberlin attaches to her Motion a document she labels a "grand jury subpoena" (Motion at ¶ 2, Exh. A), a nondisclosure order granted under the Stored Communications Act ("SCA") regarding that subpoena, a second nondisclosure order granted under the SCA covering that subpoena and 12 additional "grand jury subpoenas," and ancillary documents (Motion at Exh. A).[2] Ms. Kimberlin seeks to unseal the subpoena that she has already received from a communications provider and the other subpoenas listed on the second nondisclosure order so that she can contest them. However, she fails to address Fed. R. Crim. P. 6(e) and the caselaw governing the disclosure of grand jury materials anywhere in her Motion or Supplemental Motion. As discussed herein, Rule 6(e) does not permit disclosure of the materials that Ms. Kimberlin seeks to unseal, there is no common law or First Amendment right of access to grand jury materials, and, in any event, Ms.

---

[1] Ms. Kimberlin subsequently served the undersigned Assistant United States Attorney with a "Supplement With Additional Authority From Inspector General," but this brief does not appear to have been filed on the Court's docket and, in any event, contains no additional requests for relief or legal citations.

[2] On its face, Exhibit A to the Motion purports to contain a grand jury subpoena. The government will not confirm any matter occurring before the grand jury to which Exhibit A relates. For purposes of this Motion, however, the government will assume the validity of Exhibit A to the Motion as a grand jury subpoena and that the second nondisclosure order pertains to 12 additional grand jury subpoenas.

Kimberlin lacks standing to move to quash a subpoena issued to a third-party communications provider pursuant to the SCA. Her arguments in her Supplemental Motion about purported violations of Department of Justice internal guidelines and the remedies she seeks in response to these claimed violations are nonjusticiable.[3]

### I.   This Court Should Deny the Motion and the Supplemental Motion

Ms. Kimberlin's Motion seeks to unseal specific grand jury subpoenas issued under the SCA. Her Supplemental Motion alleges a violation of the July 19, 2021, memorandum from Attorney General Merrick Garland concerning the "Use of Compulsory Process to Obtain Information From, or Records Of, Members of the News Media" (Supplemental Motion, Exh. A). As a remedy for this alleged violation, Ms. Kimberlin seeks an order to show cause requiring the Attorney General to certify under oath whether this memorandum was complied with (Supplemental Motion at 1), that the subpoenas be unsealed (Supplemental Motion at 2), and a court order (a) mandating that the Department of Justice destroy any records received as a result of the subpoenas, (b) prohibiting the Department of Justice from violating the memorandum, and (c) making a finding that the Department of Justice violated the memorandum (Supplemental Motion at 2-3). Ms. Kimberlin also requests an emergency hearing "in order to address the FBI's request that Kelsie and her father appear at the FBI Field Office … and to question the DOJ about its lack of compliance with the Memo [regarding the news media]."[4] (Supplemental Motion at 3).

---

[3] On December 4, 2024, this Court denied without prejudice Ms. Kimberlin's Motion for Show Cause and Motion for Emergency Hearing due to her failure to serve the Respondent (*i.e.*, the Attorney General).

[4] Ms. Kimberlin's father contacted the undersigned Assistant United States Attorney on November 26, 2024, by telephone, requesting additional information about a notification Ms. Kimberlin received from a social media company and asking to have the other subpoenas listed on the nondisclosure order unsealed. The undersigned Assistant United States Attorney responded that he could not discuss the investigation due to grand jury secrecy rules and that the Department of Justice would litigate any attempt to have grand jury materials unsealed. The FBI contacted Ms.

Both the Motion and the Supplemental Motion should be denied in their entirety. Grand jury subpoenas are within the core of grand jury secrecy rules and none of the grounds to unseal them exist here, Ms. Kimberlin does not have a right of access to grand jury materials, and her allegation of a violation of internal Department of Justice policy is both unfounded and nonjusticiable.

A. Grand Jury Subpoenas Are Not Judicial Records Subject to a Motion to Unseal

"Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office." *United States v. Williams*, 504 U.S. 36, 47 (1992). "Still, at many points, from service of the subpoena through the completion of the witness's grand jury appearance, judicial proceedings relating to the grand jury *may take place*." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 498 (D.C. Cir. 1998) (emphasis added). But Ms. Kimberlin does not seek records of such judicial proceedings. Instead, Ms. Kimberlin seeks to unseal grand jury subpoenas themselves.

The common-law right of public access to judicial records "is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). It

---

Kimberlin's father on November 27, 2024, to invite him to the FBI field office in Washington, D.C. to voluntarily discuss the matter. He agreed, and they scheduled the meeting for December 4, 2024. Ms. Kimberlin subsequently emailed the undersigned Assistant United States Attorney stating that she and her father no longer wished to meet with the FBI. As the offered meeting with the FBI was voluntary, the FBI has taken no further steps to meet with Ms. Kimberlin or her father after they canceled the meeting.

is well established that "not all documents filed with courts are judicial records." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). Rather, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997); *see League of Women Voters v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020). Examples of judicial records include SCA warrants, SCA § 2703(d) orders, pen register orders, and judicial dockets themselves. *In re the Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128-29 (D.C. Cir. 2020) ("*Leopold*"). But grand jury subpoenas do not appear on the judicial docket and the government is not aware of any court that has found grand jury subpoenas to be part of the judicial record.

Grand jury subpoenas are enumerated within Federal Rule of Criminal Procedure 6(e), which mandates the secrecy of grand jury materials and provide only narrow and inapplicable grounds for unsealing. Specifically, Rule 6(e)(6) provides that "[r]ecords, orders, and *subpoenas* related to grand-jury proceedings *must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury*." Fed. R. Crim. P. 6(e)(6) (emphasis added). "This phrase—'matters occurring before the grand jury'—includes not only what has occurred and what is occurring, but also what is likely to occur. Encompassed within the rule of secrecy are the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *In re Dow Jones*, 142 F.3d at 499-500. (cleaned up). Rule 6(e) "bars courts from disclosing matters occurring before a grand jury unless the matters were previously disclosed, an exception to Rule 6(e) applies, or the materials can be redacted." *In re Cheney*, No. 23-5071, 2024 WL 1739096, at *2 (D.C. Cir. Apr. 23, 2024) (unpublished decision)

4

(cleaned up). Quite plainly, grand jury subpoenas are a component of the strategy or direction of an investigation and here, there has been no prior disclosure.[5]

      B.    <u>The Grand Jury Materials that Ms. Kimberlin Seeks to Unseal Have Not Been Disclosed by the Government or by a Grand Jury Witness</u>

Ms. Kimberlin seeks access to materials related to grand jury subpoenas relying solely on a single citation to *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former President Trump's Commc'ns with his Att'ys*, 687 F. Supp. 3d 132, 136 (D.D.C. 2023) (holding, *inter alia*, that "disclosure may be permitted where once-protected information has already been disclosed by way of a judicial or other governmental proceeding.") However, no protected information has been disclosed here; merely the fact that a grand jury subpoena was (purportedly) served on a single social media company and the existence of other grand jury subpoenas issued under the SCA and listed on the second nondisclosure order.

This lack of public disclosure is dispositive. The D.C. Circuit has consistently recognized that Rule 6(e) "expressly directs secrecy as the default position, and thus displaces the common-law right of access." *Leopold*, 964 F.3d at 1130; *accord In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) (rejecting news organization's claim to obtain records of grand jury ancillary proceedings and holding, "[T]he grand jury context is unique. It is because of their unique status that grand jury processes are not amenable to the practices and procedures employed in connection with other judicial proceedings"); *In re Dow Jones*, 142 F.3d at 503-504. In doing so, the D.C. Circuit explicitly contrasted grand jury records and orders with the type of legal process to which there was a common law right of access – such as 2703(d) applications/orders, pen register trap and trace applications/orders, and SCA search warrants. *See Leopold*, 964 F.3d at 1130.

---

[5] None of the enumerated exceptions to Rule 6(e) are applicable.

The D.C. Circuit has recognized that this Court has the power to unseal grand jury ancillary materials where the grand jury investigation has been broadly and publicly disclosed. *See, e.g., In re Cheney*, 2024 WL 1739096; *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence ("In re Press App. Concerning VP Pence")*, 678 F. Supp. 3d 135, 141-43 (D.D.C. 2023) (Boasberg, C.J.); *In re New York Times,* 657 F. Supp. 3d 136, 155 (D.D.C. 2023). These public disclosure cases recognize that, if the government discloses significant grand jury information, or a witness before the grand jury or their attorney openly and broadly discloses information about their grand jury testimony to the media, it is likely "sufficiently widely known" to allow for at least partial unsealing. *See In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994); *see also In re Press App. Concerning VP Pence*, 678 F. Supp. 3d at 141-43. However, "not every public disclosure waives Rule 6(e) protections," *In re Grand Jury Subpoena, Judith Miller,* 493 F.3d 152, 154 (D.C. Cir. 2007), and news stories quoting sources and people familiar with the matter clearly do not constitute public disclosure sufficient to permit unsealing of grand jury material. *See In re NY Times*, 657 F.Supp.3d at 157 (*citing In re Dow Jones,* 142 F.3d at 505). "Absent such reliable, credible, and authoritative disclosures of grand jury matters, Rule 6(e) protections remain intact." *In re New York Times*, 657 F.Supp.3d at 152; *accord In re Press App. Concerning VP Pence*, 678 F. Supp. 3d at 141 (recognizing that Rule 6(e) secrecy is not "waived" once any public disclosure has occurred).

Here, there has been no public disclosure of the grand jury investigation. Ms. Kimberlin makes no claim that any grand jury proceeding that gave rise to the "grand jury subpoena" attached to her Motion as Exhibit A has been broadly and publicly disclosed by the government or witnesses who appeared before that grand jury. She says nothing about the investigation at all; indeed, she

6

does not know what the grand jury is investigating.[6] Instead, she relies on materials and information disclosed by a service provider as a basis to seek to unseal additional materials. Ms. Kimberlin does not claim that the government has made public the nature and scope of any grand jury investigation that gave rise to the "grand jury subpoena." Further, Ms. Kimberlin does not claim to be a witness who testified before the grand jury. Rather, the Motion here appears to be predicated on a desire to know more information about any such proceeding. In such circumstances, one cannot fairly say that "the cat is out of the bag." *See Miller,* 493 F.3d at 154-55; *In re North*, 16 F.3d at 1245; *In re Press App. Concerning VP Pence*, 678 F. Supp. 3d at 141.

Ms. Kimberlin is in the same position as countless individuals around the country each day who are notified by a service provider that the government has subpoenaed non-content records for one or more of their accounts. The government is aware of no court that has found such a disclosure to be a sufficient basis to unseal the related grand jury subpoenas.

    C.    <u>There Is No Common Law or First Amendment Right of Access to Grand Jury Materials</u>

Ms. Kimberlin argues that "Kelsie has a First Amendment right to use her social media accounts to promote her speech and creative endeavors without interference or harassment from the Department of Justice. When the Government uses its subpoena power to intimidate or burden a social media company to curtail Kelsie's expressive activities, this violates the First Amendment." (Motion at ¶ 7). The government does not dispute Ms. Kimberlin's First Amendment right to promote her speech and creative endeavors through social media or any other means. But the D.C. Circuit has found no right of access to grand jury materials under the Constitution. *In re Dow Jones*, 142 F.3d at 499-500. Indeed, in *In re Dow Jones*, the D.C. Circuit

---

[6] The government is providing the Court with relevant background information in an accompanying *ex parte* Addendum.

7

noted that it was a "settled proposition, one the press does not contest," that "there is no First Amendment right of access to grand jury proceedings." 142 F.3d at 499.

      D.    <u>Ms. Kimberlin Lacks Standing to Move to Quash a Subpoena Issued Under the Stored Communications Act</u>

In her Supplemental Motion, Ms. Kimberlin asks the Court to order "the DOJ to destroy all records received as a result of the subpoenas." (Supplemental Motion at ¶ 6). The (purported) "grand jury subpoena" attached as Exhibit A was issued to Pinterest, a social media company. The username at issue was "kelsiekimberlin," but Ms. Kimberlin was not the recipient of any subpoena and therefore has no standing to move to quash it. Also, the SCA does not provide the remedy that Ms. Kimberlin seeks.

The SCA creates a comprehensive legal framework for issuing legal process for communication providers and includes certain limited rights of intervention and to bring civil actions, as well as limitations on causes of action. *See*, *e.g.*, 18 U.S.C. § 2703(e) (no cause of action against a provider disclosing information under this chapter), § 2704(b) (procedures for customer challenges if legal process was issued under 18 U.S.C. § 2704),[7] § 2707 (civil right of action for certain violations of law). These rights are limited and exclusive, and courts have recognized that the SCA does not permit intervention by account holders where the government process at issue is directed at a service provider, and the government is not proceeding under 18 U.S.C. § 2704. *See*, *e.g.*, *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. 2703(d)*, 830 F. Supp.2d 114, 129 (E.D. Va. 2011) (rejecting account holder from intervening to challenge a SCA order, finding that the account holders "had no statutory standing" to bring their

---

[7] Section 2704(b)(1)(A) provides that a customer or subscriber may bring a § 2704(b) challenge only when the government has sought the contents of his or her electronic communications. *See* 18 U.S.C. § 2704(b)(1)(A).

8

motion). Further, when the government uses a warrant, 2703(d) order, or subpoena to obtain non-content information, the SCA specifies that the government need not provide prior notice to the account holder. *See* 18 U.S.C. § 2703(c)(3).

The SCA's prior notice requirement is critically important here, because where Congress allows an account holder to challenge SCA process before the provider discloses information to the government, it mandates that the government give prior notice to the account holder. This approach makes sense: in circumstances in which Congress sought to allow an account holder to challenge SCA process prior to disclosure by a service provider, it needed to ensure that the account holder receive prior notice, rather than leaving notice to the discretion of the government or the service provider. Moreover, the SCA's legislative history explicitly confirms that the purpose of the SCA's prior notice requirement is to allow account holders to challenge the SCA process:

> It should be noted that when the government is required to give notice to the customer or subscriber that the purpose of such notice is to provide the subscriber or customer with an opportunity to contest the propriety of such a disclosure. The customer or subscriber has standing to raise any legitimate defense to such disclosure including any constitutional claims under the First, Fourth, Fifth or Fourteenth Amendments, any claims of privilege, and any available defenses to improperly issued subpoenas.

H. R. Rep. No. 647, 99th Cong., 2d Sess., at 69 (1986). Thus, the SCA's text and legislative history demonstrate that Congress intended to allow a challenge to SCA process only in circumstances where the SCA mandates prior notice to the account holder—that is, where the government uses a subpoena or 2703(d) order to compel disclosure of the contents of communications. An account holder may not move to quash a subpoena or 2703(d) order seeking non-content information. In not allowing account holders to challenge subpoenas or 2703(d) orders for non-content information, the SCA adopted the approach approved by the Supreme Court in *S.E.C. v. Jerry T.*

9

*O'Brien, Inc.*, 467 U.S. 735 (1984). There, the Court held that the target of an investigation was not entitled to notice of business records subpoenas issued to third parties, even though the Court recognized that its "ruling may have the effect in practice of preventing some persons under investigation by the SEC from asserting objections to subpoenas issued by the Commission to third parties for improper reasons." *Id*. at 751.

Not surprisingly, courts in our District have regularly confirmed that SCA rights are exclusive and regularly preempt other federal laws and Rules of Criminal Procedure. *See*, *e.g.*, *In re Monitoring of Global Positioning System Information*, 646 F.Supp.3d 116, 125-26 (D.D.C. 2022) (Faruqui, J.) (SCA does not require Rule 41 notice to account holder for SCA search warrant); *Kelley v. FBI*, 67 F.Supp.3d 240 (D.D.C. 2014) (Berman-Jackson, J.) (barring *Bivins* claim for alleged SCA violation because SCA provides exclusive remedies); *United States v. Ferguson*, 508 F.Supp.2d 7, 15 (D.D.C. 2007) (Kessler, J.) (finding the SCA does not provide for suppression as a remedy for violations of the SCA, no relief would be available if the government did not comply with the SCA).

Consequently, Ms. Kimberlin lacks standing to contest a subpoena issued to Pinterest or any other third-party provider. Moreover, according to the purported "grand jury subpoena" attached to Ms. Kimberlin's motion, compliance with the subpoena was due by December 15, 2022, and there is no right under the SCA to permit the subscriber or customer of a service provider to seek a court order mandating the government to destroy evidence received from a third-party provider in the course of a grand jury investigation. Congress provided that "[t]he remedies and sanctions described in [the SCA] are the only judicial remedies and sanctions for nonconstitutional violations of [the SCA]." 18 U.S.C. § 2708; *cf. United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) ("Congress made clear that it did not intend to suppress evidence gathered as a result

of § 2703(c) violations"). Ms. Kimberlin has identified no authority, in the SCA or elsewhere, that allows her to challenge the "grand jury subpoena" identified at Exhibit A on nonconstitutional grounds.

  E.  <u>Department of Justice Internal Guidelines are Nonjusticiable</u>

In Ms. Kimberlin's Motion, she describes herself in the first enumerated paragraph as "a popular 25 year old singer who for the past 13 years has used social media to promote her music and entertainment activities. Many of her songs and music videos are about important issues facing the world." Indeed, this description matches information that is publicly available regarding Ms. Kimberlin.

That said, even if Ms. Kimberlin were a member of the news media as she alleges in her Supplemental Motion, it would not create a cause of action for Ms. Kimberlin as it pertains to grand jury subpoenas or for any other type of legal action. Department of Justice internal guidelines, such as the Attorney General's July 19, 2021, memorandum (later codified into the Justice Manual at § 9-13.400 and into the Code of Federal Regulations at 28 C.F.R. § 50.10) are not externally enforceable and do not create causes of action.

The government certainly takes its obligations under internal Department policies seriously. However, in reference to the specific regulations at issue here, 28 C.F.R. § 50.10(t) provides: "This section is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Moreover, the Justice Manual explicitly states that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Justice Manual § 1-1.200. And the D.C. Circuit has made clear that "we do not believe

the general guidelines established by the Manual are judicially enforceable, particularly since these guidelines do not reflect constitutional concerns." *United States v. Kember*, 648 F.2d 1354, 1370 (D.C. Cir. 1980); *see also United States v. Blackley*, 167 F.3d 543, 549 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights.").

## Conclusion

Ms. Kimberlin does not have a right of access to grand jury materials and her arguments regarding purported violations of Department of Justice policies are both unfounded and nonjusticiable. Her Motion and Supplemental Motion should be denied.

Date: December 16, 2024

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Stuart Allen*
Stuart Allen
D.C. Bar No. 1005102; N.Y. Bar No. 4839932
Assistant United States Attorney
National Security Section
601 D Street NW
Washington, D.C. 20530
202-252-7794
stuart.allen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this 16th day of December, 2024, I filed the foregoing with the Clerk of Court via ECF and have served the following individual by email:

Kelsie Kimberlin
notches27@gmail.com

/s/ Stuart Allen
Stuart Allen
Assistant United States Attorney