UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GRAND JURY SUBPOENAS | Misc. Case No. 24-159 (JEB) |

MEMORANDUM OPINION

In late 2022, the Department of Justice issued several subpoenas in connection with an ongoing grand-jury investigation and, at the same time, sought and received a nondisclosure order from a Magistrate Judge of this court instructing the recipients of those subpoenas to keep them confidential. After the NDO was extended at least once, it eventually expired, prompting a recipient — social-media company Pinterest Inc. — to notify one of its users that it had received a subpoena seeking information relating to her account. That user, Kelsie Kimberlin, now asks this Court to unseal that subpoena and several others that she surmises relate to her other social-media accounts. See ECF No. 1 (Mot.), ¶¶ 1–5. She also seeks a hearing over the allegedly improper issuance of the subpoenas, citing internal DOJ guidelines governing the use of compulsory legal process to obtain information about a journalist. See ECF No. 7 (Reply), ¶¶ 5–6. The Government opposes, arguing that no public disclosure has occurred to warrant unsealing any of the requested documents and that its internal policies are judicially unenforceable. See ECF No. 3 (Opp.) at 5–7, 11–12. Essentially agreeing with DOJ on both counts, the Court will deny the Motion as to all the documents, aside from the Pinterest subpoena already disclosed.

I.      Background

Kimberlin is, in her own words, "a popular 25 year old singer" who makes music "about important issues facing the world," Mot., ¶ 1, while also managing to serve as an "accredited

1

journalist" reporting "extensively on the war and atrocities committed in Ukraine." Reply, ¶ 5. On November 22, 2024, however, she was "disconcert[ed]" to discover that two years prior the Government had issued a subpoena to Pinterest seeking information related to her account, such as records of her session times and durations, IP addresses, and various "[t]elephone or instrument numbers." Mot., ¶¶ 2, 4, 10; ECF No. 1-1 (Exh. A) (Documents) at ECF pp. 1–2 (letter to Pinterest), 5 (detail of subpoena). Kimberlin was alerted to this fact by Pinterest itself, which disclosed the subpoena a mere two days after the NDO covering it expired. See Mot., ¶ 4. As part of that disclosure, Pinterest also provided the text of the original NDO and the extension order, which together revealed that the subpoena had been obtained on behalf of a federal grand jury empaneled in this district and that twelve other subpoenas had issued in connection with the same investigation. See Mot., ¶ 3; Documents at ECF pp. 3 (NDO), 9–10 (Extension).

Kimberlin shortly afterward brought this miscellaneous action to unseal the subpoena served on Pinterest as well as the twelve others listed in the NDO extension. See Mot., ¶¶ 5–8. She then filed a supplemental brief alleging that DOJ had violated its own media policy in obtaining the subpoenas because the Deputy Attorney General had purportedly not been consulted before they were sought, as she believes is required by the Department's internal guidelines. See ECF No. 2 (Supp. Brief), ¶¶ 3–4. She requested, among other things, a court order that the Government "destroy all records received as a result of the subpoenas." Id., ¶ 6. The Court, however, subsequently denied that request without prejudice because Movant had failed "to properly serve Respondent." See Minute Order of Dec. 4, 2024.

The Government has now filed an Opposition to the Motion to Unseal as well as a sealed and *ex parte* Addendum explaining the context of the grand-jury investigation. See Opp.; ECF No. 4 (Addendum). In her Reply, Kimberlin renews her argument that DOJ violated its internal

guidelines in obtaining the subpoenas, but she requests only a hearing to "inquire into [their] improper . . . issuance." Reply, ¶¶ 4–6.

**II.  Legal Framework**

　A.  Grand-Jury Secrecy

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm." In re Grand Subpoena, Judith Miller (Miller I), 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case (Dow Jones II), 199 F.3d 522, 526 (D.C. Cir. 2000)). Witnesses "enter the grand jury room alone . . . . No judge presides and none is present." In re Motions of Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Access to grand-jury materials turns on Federal Rule of Criminal Procedure 6(e)(2), which dictates that "[o]ther than witnesses, each person present . . . is forbidden from disclosing 'matters occurring before the grand jury.'" Id. (quoting Fed. R. Crim. P. 6(e)(2)); see also In re Sealed Case No. 99-3091, 192 F.3d 995, 1002 (D.C. Cir. 1999) (Rule 6(e) covers only "matters occurring before the grand jury"). In this Circuit, courts also lack any "inherent authority" to release matters occurring before the grand jury, outside certain enumerated exceptions. McKeever v. Barr, 920 F.3d 842, 844, 850 (D.C. Cir. 2019); see Rule 6(e)(3) (exceptions). This arrangement "safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." Id. at 844 (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)).

　B.  Accessing Ancillary Proceedings

The grand jury's business occasionally calls for "judicial proceedings relating to," but "at arm's length" from, the grand jury itself, such as the summoning of witnesses or the issuance of

subpoenas. Dow Jones I, 142 F.3d at 498. Those subpoenas, in turn, are not themselves subject to grand-jury secrecy but are instead governed by Rule 6(e)(6), which requires that they "be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury" (emphasis added). Rule 6(e)(6) displaces any First Amendment or common-law right of access to subpoenas and other ancillary documents, see Dow Jones I, 142 F.3d at 500–04, while allowing for their release once sealing is no longer "necessary" to protect grand-jury secrets.

In assessing the extent of such necessity, our Circuit has explained that Rule 6(e)(6)'s protection of "a matter occurring before a grand jury" encompasses "not only what has occurred and what is occurring, but also what is likely to occur" before that body. Id. at 500. The Rule therefore protects information in ancillary documents that reveals "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" Id. (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)). Although Rule 6(e)(6) protection "does not create a type of secrecy which is waived" as soon as "public disclosure occurs," once "information is sufficiently widely known[,] . . . it has lost its character as Rule 6(e) material." Id. at 505 (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)). The Rule's secrecy requirements therefore yield only "when there is no secrecy left to protect." In re Grand Jury Subpoena, Judith Miller (Miller II), 493 F.3d 152, 154 (D.C. Cir. 2007) (citation omitted). When that occurs, this Court's Local Criminal Rules provide the Chief Judge substantial discretion in unsealing any disclosed materials, applying redactions as necessary. See Local Rule 6.1; In re Grand Jury Subpoena, No. 18-3071, Order at 1 (D.C. Cir. Apr. 23, 2019).

4

### III.  Analysis

In the main, Kimberlin seeks two forms of relief: (1) a court order unsealing "all the records and subpoenas" relating to the grand-jury investigation of which she has been made aware, see Mot., ¶ 5; and (2) a hearing to ventilate her argument that DOJ violated its own media policy when it obtained these subpoenas.  See Reply, ¶ 6.  The Court addresses each in turn.

#### A.  Motion to Unseal

As to the first, Movant hangs her hat almost exclusively on the inapposite peg of the expired NDO.  See Mot., ¶ 5; Reply, ¶ 1.  The fact that an order has expired, however, has nothing to do with the separate confidentiality requirements of Rule 6(e)(6).  Regardless of whether the NDO governing Pinterest remains in effect, the Rule still requires that all other grand-jury material "be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."  Fed. R. Crim. P. 6(e)(6).  Indeed, the contents of the other subpoenas and NDOs — and the grand-jury investigation that prompted them — remain entirely undisclosed.  As the Government rightly notes, unsealing them and any other related records would plainly "disclos[e]" a "matter occurring before a grand jury," Fed. R. Crim. P. 6(e)(6), most directly by revealing "the strategy or direction of the investigation."  Opp. at 4 (quoting Dow Jones I, 142 F.3d at 500).  Rule 6(e)(6) exists precisely to avoid such an outcome.

In her sole attempt to grapple with the applicable caselaw, Kimberlin quotes In re Press Application for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings Concerning Former President Trump's Communications with his Attorneys, 687 F. Supp. 3d 132 (D.D.C. 2023), for the proposition that "disclosure may be permitted where once-protected information has already been disclosed by way of a judicial or other governmental proceeding."

Id. at 136. Nothing of that sort has occurred here. See Opp. at 5. Pinterest, a private party, revealed on its own initiative — and only to Kimberlin (not a witness herself) — the contents of one subpoena and the mere existence of several others. See Exh. A. That limited disclosure is far from the type of governmental or public disclosure that has traditionally been thought sufficient to destroy grand-jury secrecy. See, e.g., Miller II, 493 F.3d at 154–55 (releasing only those materials that were revealed "either during [a] trial or by grand jury witnesses themselves"); Dow Jones I, 142 F.3d at 505 (when witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," that fact "lost its character as Rule 6(e) material") (quotation marks omitted); In re North, 16 F.3d at 1245 (noting that, "when a judge in open court and in the presence of reporters . . . inadvertently state[s] the name of the as yet unindicted subject of a grand jury investigation," the "cat [may be] out of the bag") (quotation marks omitted). "Absent such reliable, credible, and authoritative disclosures of grand jury matters, Rule 6(e) protections remain intact." In re N.Y. Times Co., 657 F. Supp. 3d 136, 152 (D.D.C. 2023).

Indeed, if the cat were in fact "out of the bag," as Movant claims, see Reply, ¶ 2, there would be no need for her to seek unsealing of the subpoenas in the first place. Yet, aside from the Pinterest subpoena — which the Court will order to be unsealed — all the other cats are still in the proverbial bag. The fact that Kimberlin has been made aware of the details of one subpoena and the existence of several others does not entitle her to compel unsealing of additional protected information under the misguided pretense that it has all basically been disclosed anyway. Cf. N.Y. Times Co., 657 F. Supp. 3d at 152 (unsealing cannot be used to "fill gaps" in a party's knowledge). Rule 6(e)'s protections are not so easily thwarted.

B. Request for Hearing

Kimberlin separately takes issue with the fact that the subpoenas were issued at all. Emphasizing her credentials as a journalist, she imaginatively asserts that the purpose of the subpoenas was "to snoop on [her] social media activities in order to uncover possible connections to sources." Reply, ¶ 5. She likewise suspects — providing no evidence — that DOJ obtained the subpoenas in violation of the Attorney General's July 19, 2021, Memorandum (codified at 28 C.F.R. § 50.10), which she reads to require consultation with the Deputy Attorney General before the Department seeks any compulsory legal process to obtain information on a journalist. See ECF No. 7-1 (Letter to DOJ) at 2; see also ECF No. 6 (Supplement) (appending report from DOJ Inspector General on department's media policy). In her Reply, she additionally contends (again, citing nothing) that "[t]he Government, when it applies for a subpoena, has an obligation to tell the Court that it is subpoenaing the records of a journalist," which apparently did not happen in this case. See Reply, ¶ 6. For all these purported sins, she requests a hearing in this Court "to inquire into the improper application and issuance of the subpoenas." Id.

Even if Kimberlin had accurately interpreted DOJ's policy (which the Court has reason to doubt) and even taking as true her assumption that it was not followed (which the Court is not bound to do), she appears not to have read to the end of the document. See Opp. at 11–12. The last provision clearly states that the media guidelines do not "create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 28 C.F.R. § 50.10(t). Similar language also appears at the top of the Justice Manual, a compendium of DOJ guidelines housing the policy that Movant invokes. See DOJ, Justice Manual, § 1-1.200;

see also id. § 9-13.400 (media policy). Our Circuit long ago made clear that the guidelines in the Justice Manual — such as, presumably, those Kimberlin invokes here — are not judicially enforceable. See United States v. Kember, 648 F.2d 1354, 1370 (D.C. Cir. 1980); United States v. Blackley, 167 F.3d 543, 548–49 (D.C. Cir. 1999). If Movant is concerned that DOJ is not following its own guidelines, her proper recourse is therefore to petition the Department itself or its Inspector General — which she already appears to have done. See Letter to DOJ at 2.

Kimberlin likewise cites no authority for her contention that federal prosecutors were obligated to notify the court that she was a journalist before seeking the Pinterest subpoena, nor does she support her factual assumption that no such notification was given. See Reply, ¶ 6. The Court therefore has no basis to order her requested hearing.

### IV.     Conclusion

For the foregoing reasons, the Court will deny the Motion for Unsealing, aside from the Pinterest subpoena, which Movant already possesses. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: January 24, 2025